Good morning. I'd like to reserve three minutes for rebuttal time, please. May it please the Court, Jason Weinstein, Weitz and Luxenberg, for Plaintiff Appellant Cindi Bekins. Your Honors, the issue in this case is simple, whether the statute of limitations was told by the delayed discovery rule. And here, the case law in California, both in state courts and in federal courts interpreting it, regarding that rule makes it clear, first, that Ms. Bekins had no duty to investigate her kidney illness when she first became ill in 2011 until she learned that it could have a negligent cause later in 2016, and, second, that the mere existence of articles in specialized medical journals, which Ms. Bekins did not see, did not put her on any inquiry notice that her illness could have a negligent cause. In 2011, Ms. Bekins had been taking PPIs, including Nexium, the product of the defendants, for over 10 years, beginning in the year 2000. And it wasn't until that great length of time when she first became ill. So as a result, this was very different from a situation like a surgery, where somebody then becomes injured immediately after and can make the connection promptly, or really should make the connection promptly. When did she first become ill? What was the date of that? I don't have an exact date. What was the year? 2011. And she had been taking the PPI medication since the year 2000, specifically the PPI products of the defendants since 2003. But again, at that time, because of the great length of time that she had been taking the PPI medication, a reasonable person wouldn't make the connection, a reasonable person who, like Ms. Bekins, is a layperson, not a doctor, not a scientist, not somebody who would be expected in any way to have that kind of specialized medical knowledge. She had been taking these drugs for quite some time. So they go on to doctors in the meantime, between the time she got ill and whenever she filed a suit. Or do you know? Well, the proposed amended complaint does make reference to, in various places, that Ms. Bekins had been consulting doctors. I believe that on paragraph 100 of the proposed revised complaint, that's Excerpt of Records, page 36, it mentions treating physicians. On paragraph 104 of the proposed revised complaint, that's Excerpt of Records, page 37, she mentions that she did not have any discussions with her doctor that there was an association between chronic kidney disease and PPI use. So reading the complaint in the light most favorable to Ms. Bekins, the inference is clear that there had been doctors with whom she'd been consulting, with whom she'd been receiving treatment, and based on their consultation, Ms. Bekins had no actual knowledge that there was a connection between her illness and PPI use. And the case law in California is clear that laypeople can rely upon the specialized knowledge of physicians and have no independent obligation to research their illness to look for a negligent cause of that. So the proposed amended complaint then expressly says that the doctors didn't inform her of that connection or that risk. Is that right? MR. BOUTROUS Well, the question of whether it expressly says that or whether that's a clear inference, I think that's a little bit of a gray area. MS. BEKINS So what does it say about the doctors? So she was seeing the doctors. They were treating her for the kidney disease, and presumably the doctors would have been aware of these, the connection, and informed her of that. But what does it say about that connection or the information that came from the doctors? MR. BOUTROUS Well, I don't have any more information other than what I just read to you from paragraph 104. But again, this goes back to the decision of the district court. To the extent that the complaint might not be as specific as this Court might require, that would properly be the subject of a further amendment. And that's where we believe the district court erred in dismissing the case with prejudice and without leave to amend. MS. BEKINS So it's your position, if the complaint sufficiently alleges that the doctors didn't tell her, and perhaps paragraph 104 does that or perhaps it could be more specific, then the duty to inquire was never triggered. MR. BOUTROUS Absolutely, Your Honor. Absolutely. CHIEF JUSTICE ROBERTS I guess during discovery, they could attempt to show or determine that she in fact had been so – she had been advised. MR. BOUTROUS Oh, there's no question of that. In fact, I think again … CHIEF JUSTICE ROBERTS We're just dealing with a 12-B6 on the pleadings. MR. BOUTROUS Absolutely. Absolutely. And I think the case law is quite clear that in terms of whether a tolling provision applies to the statute of limitations, whether or not the plaintiffs can make out that the tolling provision should apply is a question of fact. That can be raised on a summary judgment motion, and that can certainly be raised in front of the trier of fact at a trial. The defendants will have every opportunity in the context of discovery and in the context of a trial to attempt to show that, in fact, the doctors made some commitments to the plaintiffs communication to Ms. Beekins that the PPIs could have caused her illness. But at this stage on a 12-B6 motion, there's simply no basis to dismiss on that basis. The other aspect in terms of why the district court actually dismissed the case with prejudice was that the district court found that because of the existence of these essentially that there was some sort of presumptive notice that there was a negligent cause of Ms. Beekins' illness to her. But again, the case law is quite clear that media attention, even when the media is much more mainstream than these specialized articles, will not impute that sort of knowledge to somebody who is a layperson,  attention. And at this stage, once again, that knowledge cannot be imputed to Ms. Beekins. Again, in discovery at a trial, the defendants would have every opportunity to attempt to show that somehow Ms. Beekins accessed these articles. But at this point, that's simply not an appropriate inference to raise, reading the complaint in the light most favorable to Ms. Beekins as the plaintiff. Okay. Do you want to save some rebuttal time? Yes, Your Honor. Thank you. May it please the Court, I'm Stanton Jones, and I represent the defendants. Plaintiff alleges that in 2011, she suffered an acute kidney failure, which she describes as an incredibly severe, life-threatening, and sudden-onset medical injury. And yet, for five years, it's apparent that she undertook no effort whatsoever to inquire into potential causes of this very severe, life-threatening medical injury. Instead, she filed this lawsuit in 2016, five years after the injury, after she apparently saw a television commercial purporting to draw an association between PPIs and kidney ailments. Where is she supposed to get this information that you say she needs, from her doctor or TV or one of these high-tech periodicals, or is there some other case? So, I think she absolutely should have consulted with her doctors. And I think it's very striking and important that in her original complaint, in her proposed amended complaint, in both of her briefs to this Court, and even now this morning, when asked for more details about any conversations or communications with her doctors after her acute kidney failure, the plaintiff has failed to come forward with any allegation or information about any conversation or communication she had with any doctor about this. But seeing the doctor, and she the complaint alleges that the doctor didn't tell her that her kidney disease could be caused by PPI use. And so the other medical information the doctor may have told her about, well, maybe you have some environmental exposure, is sort of irrelevant to her complaint. Why isn't the fact that she didn't know, that her doctors didn't tell her this specific potential cause, enough for her complaint? Your Honor, it's because she doesn't allege. She bears the burden in invoking the discovery rule to allege facts showing that she was diligent in pursuing her claim, and that despite the exercise of reasonable diligence, she was unable to discover the basis for her claim. That is her burden, including the acute condition. And is your position that that burden of diligence began when she suffered this acute condition? Yes, Your Honor, certainly. And that's the way you read California law? Yes, Your Honor. When a person suffers a — and in what she described as — says that if a plaintiff suffers an acute condition, that they're on — they're on inquiry notice, and they must diligently seek to find, you know, who the — who the possible wrongdoer was. Sure. Your Honor, several cases say this. So a case that the plaintiff relies on, Irving v. Lenmar, states the proposition generally. The discovery rule incorporates a diligence requirement. No, but I'm — that's not — I understand there's a diligence requirement. I've read the cases. I know that. But I want to — I want a case — I want you to point me to a case that says that the diligence requirement begins when they have an acute condition, like this. Sure. So I think you could look at the Nelson case. Nelson. Okay. So Nelson was a case where the defendant made a similar argument that the plaintiff had some medical conditions that should have triggered an obligation to inquire. The court there rejected that argument, but it did so because the court said the plaintiff had just suffered common and nonspecific symptoms, like fatigue or a sporadic heart palpitation that had gone on for a long time. And the court said in those circumstances where all the plaintiff experiences are these highly common, nonspecific symptoms, that is not — doesn't inform the plaintiff that she has suffered an injury, a medical injury that triggers. I thought it had to — the injury component, that use of that word, incorporates the idea that the injury was caused by wrongdoing. And so there would have to be something in kidney failure that would give rise to a suspicion, or she reasonably should suspect, that her injury was caused by wrongdoing. Are you saying that the plaintiff should suspect that the suspicion of wrongdoing is not part of California's discovery rule? No, Your Honor. What I'm saying is that — So there has to be a suspicion of wrongdoing. It isn't just enough to know you have an injury or an acute condition. You have to suspect or should suspect that the condition was caused by wrongdoing. Your Honor, I think there are two key principles of California law. The first is that the plaintiff needs to be diligent in investigating potential  Well, the first is, she's put on — it says the statute begins to run when the plaintiff suspects or should suspect that her injury was caused by wrongdoing. That's what Jolly says for the discovery rule. So before your — your — that occurs, there's no trigger. There's no trigger to be diligent. Why should she have suspected that her injury was caused by wrongdoing? Your Honor, I think that an injury that is as severe, as sudden, and as life-threatening as an acute organ failure triggers a general duty to inquire into potential causes, to ask, to ask your doctor what — Well, she may have done that. All she's saying is that she wasn't told that it was caused by the PPIs. I think — I mean, I don't know if she was told that, because that's the way people go in with cancer, and they say, what did I do wrong? And the doctor always tells you, don't think about it. You know, you just have to go forward. So I don't know if they do that with kidney failure or not, but we don't know what she asked or we don't know what the communication was with the doctor. Exactly. And the fact that we — All we know is she — she was not told that it could have been caused by the PPIs, that there was actual wrongdoing. I mean, people get sick all the time without wrongdoing. Your Honor, in this case, the fact that we still, at this point, have — that we don't know, as you say, we don't know about — But we're on a motion to dismiss. We're on a complaint. Why would we know about it? Because in a situation like this where the complaint is otherwise time-barred on its face, she filed suit five years after an injury, it's a two-year statute of limitations, she bears the burden to allege facts under the Twombly-Iqbal standard. She needs to allege facts that can establish the application of the decision and the discovery rule. And so — So what fact would she have to allege? I asked my doctor what caused my kidney disease, and he said he didn't know. Would that — would that — is that the fact that has to be alleged? That — that would suffice. There are many of the cases that the plaintiff — So the complaint could be amended to include that sentence. It — it could have, but it hasn't. And — and even in plaintiff's briefs in this court, and even at oral argument this morning, when questioned about what was the existence of any communication with any of her doctors about any potential cause of this severe injury, there's no information. And again, it's the plaintiff's burden. Even at the pleading stage, the plaintiff needs to allege facts that could save what are otherwise facially time-barred claims. And — and the fact that we don't know — as you say, we don't know the contents of any — by observing a TV ad. Correct. Right? Correct. And in — I gather in your — your argument, that's just not — that — that just doesn't cut it. The statute of limitations had already run, right? And so this is — I think this is a key point. Under her theory of the California statute of limitations, a plaintiff could suffer the most severe, life-threatening, acute medical injury imaginable. And — Are you talking about an injury or a disease? I mean, she had kidney failure. She didn't wake up with her arm cut off or with her appendix removed. I mean, she — she had a disease, and she went in to see her doctor. So I'm not understanding how you're phrasing that. So it's an — it's an acute kidney failure. It's an acute, meaning sudden-onset organ failure. It's not like a diagnosis. So if you have an acute heart attack, should you suspect wrongdoing? I — you know, it would potentially depend on other details, but it could be — I mean, how overweight you were or something like that. Sure. I mean, acute heart — acute heart attacks happen all the time. And as a — we would have to say, as a matter of law, a reasonable person should suspect there was some wrongdoing. And that — that doesn't seem to be consistent with California case law. So I would point you to the Fox case, which says — which says a few things that are relevant on this point. First, it says, Plaintiffs are charged with presumptive knowledge of an injury. And there's a footnote, and they explain that injury in this context means both the physical injury and its wrongful cause. And it's negligent cause. And so, in other words, you have to know — you have to suspect that there is a negligent cause of that injury, which — which is consistent throughout California case law. Well, what it's saying is Plaintiffs are — Plaintiffs have presumptive knowledge of that negligent cause if they — if they have the opportunity to obtain that knowledge from sources open to their investigation. And in this case, there's no reason to guess whether there were sources open to her investigation. Her complaint now relies on decades-old, publicly available materials to support what she claims is the association between PPIs and — and her kidney injury. Well, her complaint says that her first knowledge of this was through the TV, right? Yes. That was the proposed amended complaint. The proposed amended complaint alleges for the first time that she first — But you would have her recite, I went to Dr. Smith on such-and-such a date, and he didn't say anything about it. Then I went to Dr. Jones on this date, and he didn't say anything about it, and go down a litany like this. You think Tuomaley requires this? I think something along those lines, yes. Tuomaley requires the Plaintiff to allege that she was reasonably diligent in investigating. And this — those are, in fact, the facts of many of the cases that Plaintiff relies on. Many of the cases that she cites involve situations where the Plaintiff was specifically told by a doctor or, in one case, a dentist, that their injury had been the result of some natural cause, or that the injury was the result of some other cause other than the defendant's alleged conduct. And — and so, yes, to — to allege facts that could establish the application of the discovery rule, the Plaintiff needs to plead that she acted with diligence, and that despite her diligence, she was nonetheless unable to discover the basis for her claims within the limitations period. This — this was set forth very clearly by — in a 2016 unpublished decision that the plaintiff of this Court, Plumlee v. Fizer, that's cited in — in Plaintiff's reply brief. There, the Court — this Court said, relying on many of the California cases cited here, including Fox, the Court said, to delay accrual of an otherwise time-barred claim under the discovery rule, the Plaintiff needed to allege that she exercised reasonable diligence to discover the factual basis for her claims within the limitations period, and that she was unable to discover the factual basis for her claims despite her reasonable diligence, and that neither the complaint nor the proposed amended complaint, nor either of Plaintiff's briefs in this Court, set forth allegations that could satisfy either of those elements. Sotomayor, was that quote before or after she reasonably should have known that her problem was caused by wrongdoing? So in Fox, the language you quoted is after. So the reasonable diligence is triggered by suspecting or reasonably should suspect that your problem, your issue is caused by wrongdoing or a negligent cause. Yes. There certainly needs to — there certainly needs to be a duty to investigate. And Plaintiff's theory is that no matter how severe an injury a person suffers, there's no duty to investigate whatsoever until the information about a wrongful cause just comes to you. Of whether there is a wrongful cause. Yes. I think that's California law, that you don't have a duty to investigate until you reasonably — a reasonable person would suspect a wrongful cause of the problem. So you don't have a duty to investigate the wrong — the cause of the heart attack unless you have reason to suspect that someone actually inserted something wrong into your heart that caused it. So, you know, California law as set forth in Fox says that Plaintiffs have presumptive knowledge. They need to investigate, and they have presumptive knowledge of both the injury and its wrongful cause if that information is available to them through sources open to their investigation. And in — But it says they don't — a Plaintiff a little earlier in Fox, it says a Plaintiff has reason to discover a cause of action when he or she has reason at least to suspect a factual basis for its elements, which includes the wrongful cause. And Fox says a lot of things, but I don't read it as being inconsistent with the — the general rule. I think the general rule applicable here is that a Plaintiff who suffered such a severe injury needs to conduct some investigation into potential causes, and to — to invoke the discovery rule needs to allege that she's done so at the pleading stage. This complaint has not done so. The amended complaint doesn't do so. Thank you. Thank you. Thank you, counsel. Just a couple of quick points. I think, actually, it's an interesting point that Judge Siler hit upon in terms of the complaint does say, the proposed amended complaint specifically at paragraph 103, which is on Excerptive Records, page 37, that Ms. Beekins was not aware of the connection between PPIs and her kidney illness until April 2016. So I would say that giving every inference toward the benefit of the Plaintiff, that phrase in conjunction with the other references to meeting with treating physicians would, again, create the inference that none of those doctors actually raised that connection to her. Well, should she have been aware that, given the acute nature that came on suddenly — I don't know if that's alleged in the complaint, but that's what opposing counsel says — that a very serious, life-threatening illness, she should have suspected that there was a wrongful cause. She didn't need to know specifically that it was caused by PPIs, but she should have suspected there was a wrongful cause and investigated what the wrongful cause was. I don't think that there's anything in California case law or Federal case law interpreting California law that would make any distinction for some sort of acute illness. The other thing I would say is that in the context of a motion to dismiss, I don't think that's what could be at issue. I think that in the context of a summary judgment motion or in the context of trial, if the defendants were to come forward with evidence showing that with an acute attack like that, that that was different somehow from kidney illnesses that are not sudden and acute, in other words, that solely PPIs would cause the acute nature of the attack, then that's a factual issue. But at this stage — I don't think it needs to be PPIs, does it? Just if you have this — if this sort of sudden illness a reasonable person would suspect was caused by some external factor or some negligent cause. Well, again, I — there are, as Your Honor identified before, there are plenty of other sudden acute ailments that strike people that are simply idiopathic or don't have any negligent cause. There's nothing to suggest in the complaint or otherwise that a sudden acute kidney ailment would necessarily have a negligent cause. And again, she did consult with doctors. There's the implication from the defendants that Ms. Beacon simply sat back, made no inquiry whatsoever, sat on her rights. And that is belied by the proposed amended complaint, which specifically makes reference to physicians who Ms. Beacon saw. Okay. Thank you. Thank you, counsel. We appreciate the arguments on both sides. And the matter is submitted, and have safe travels back east.
judges: Siler, Paez, Ikuta